## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **HILAL K. HOMAIDAN on behalf of himself and all others similarly situated,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**SALLIE MAE, INC,**<br>**NAVIENT SOLUTIONS, LLC,**<br>**NAVIENT CREDIT FINANCE**<br>**CORPORATION,**<br><br>**Defendants.** | **Case No. 1:22-CV-6316-ERK**<br><br>**Adv. Pro. No. 17-1085-ESS** |

## APPELLANTS' EMERGENCY MOTION TO STAY PRELIMINARY INJUNCTION

Appellants Navient Solutions, LLC and Navient Credit Finance Corporation (collectively "Navient") file this Emergency Motion to Stay the Preliminary Injunction entered by the Bankruptcy Court on October 17, 2022, Adv. Pro. No. 17-1085, Dkt. No. 404. Navient respectfully shows as follows:

### I.        INTRODUCTION

On July 11, 2022, more than five years after the commencement of this case, the Bankruptcy Court entered a Temporary Restraining Order (the "TRO") of extraordinary scope that "restrain[ed] and enjoin[ed]" Navient from "taking any acts to collect on" a vaguely described category of student loans. *See* Adv. Pro. No. 17-1085, Dkt. No. 342. Navient sought to appeal the TRO on the basis that it fell into an exception to the rule that temporary restraining orders are generally not appealable. Navient also sought a stay of the TRO pending appeal, both before the Bankruptcy Court and the District Court. Following the Bankruptcy Court's denial of Navient's motion for a stay, the District Court (Komitee, J.) determined that the TRO was not appealable.

*See* Case No. 22-cv-4398, Dkt. No. 9.  The District Court therefore denied Navient's motion for leave to appeal, which obviated the need to address Navient's stay motion.  *Id.*

Since the developments outlined above, the Bankruptcy Court—on October 17, 2022—converted the TRO into a Preliminary Injunction, *see* Adv. Pro., No. 17-1085, Dkt. Nos. 403, 404, and Navient has again sought appellate review.  *See id.*, Dkt. Nos. 405, 407.  To obtain that review, Navient filed a Notice of Appeal (consistent with Navient's view that the Preliminary Injunction is appealable as of right) and an alternative motion for leave to appeal (to protect itself in the event the District Court were to conclude that the Preliminary Injunction is not appealable as of right) and an alternative petition for mandamus (given the Preliminary Injunction's unprecedented scope and nature).  Navient also sought a stay pending appeal of the Preliminary Injunction, which the Bankruptcy Court denied on November 2, 2022.

Navient now seeks a stay of the Preliminary Injunction from the District Court.  While many of Navient's substantive arguments in support of a stay are similar to those raised by Navient when it sought a stay of the TRO, this case is now in a different procedural posture, given that the TRO has been converted into a Preliminary Injunction.  While there were questions regarding the appealability of the TRO that the District Court previously resolved against Navient, the appealability of the Preliminary Injunction presents different issues.  As Navient has demonstrated in its Motion for Leave to Appeal and Alternative Petition for Mandamus, the Preliminary Injunction is subject to appellate review because it is effectively a final judgment, or because it is a preliminary injunction appealable as of right or appealable under the standards of 28 U.S.C. § 1292(b), or because it meets the standard for mandamus review.  *See* Dkt. No. 407 in Adv. Pro No. 17-1085. Given that the Preliminary Injunction is subject to appellate review for reasons that

did not apply to the TRO, the question of Navient's right to a stay pending appeal is now squarely presented.

And, there is a substantial likelihood that the Injunction will be reversed on appeal, in part because:

- The Injunction purports to cover borrowers who received bankruptcy discharges in every judicial district in this country, even though Bankruptcy Court's authority is limited to addressing discharge injunctions issued in the Eastern District of New York.

- The Injunction effectively grants class-wide relief, even though no class has been certified and even though Plaintiffs seek certification of a class that is inherently uncertifiable.

- The Injunction was issued without any competent evidence to support it, let alone evidence demonstrating that Plaintiffs or putative class members have a likelihood of success on the merits or will suffer irreparable injury.

- The Injunction is grossly overbroad, even under Plaintiffs' theory of the case, because it enjoins collection on loan amounts within the cost of attendance.

- The Injunction was issued with no meaningful explanation for Plaintiffs' years-long delay in seeking emergency relief.

- The Injunction fails to identify the loans on which Navient is precluded from collecting with the specificity and detail required by due process and by Rule 65 and effectively requires Navient to guess at the conduct that it is enjoined from pursuing.

- The Injunction purports to require the implementation of mandatory measures to alter the status quo without adequately defining the compliance measures required of Navient.

- The Injunction threatens to severely harm putative class members without providing them with notice or any meaningful opportunity to protect their interests. *See* Declaration of Patrick Theurer filed contemporaneously herewith

- The Injunction threatens Navient with significant harm for which, if the Injunction is reversed, Navient will have no practical remedy. *See* Theurer Declaration.

As explained in more detail below, these circumstances justify a stay pending appeal.

## II.     RELEVANT PROCEDURAL AND FACTUAL BACKGROUND

The relevant background is as follows:

3

- In 2009, Hilal Homaidan filed a bankruptcy petition in the Eastern District of New York and identified on his bankruptcy schedules that he was indebted on several student loans.  Case No. 1-08-48275-ess, Dkt. No. 1.

- Homaidan received a bankruptcy discharge on April 9, 2009.  *Id.*, Dkt. No. 21.

- Homaidan's discharge order informed him that "debts for most student loans" were "not discharged."  *Id.*

- Homaidan did not raise any issue in his bankruptcy case concerning the dischargeability of his student loans until April 2017, *eight years after his discharge*.  *Id.*, Dkt. Nos. 28-30.

- In 2013, Reeham Youseff filed a bankruptcy petition in the Eastern District of New York and, like Homaidan, disclosed on her schedules that she was indebted on several student loans.  Case No. 1-13-46495-ess, Dkt. No. 1.

- Youseff received a bankruptcy discharge on February 6, 2014.  *Id.*, Dkt. No. 9.

- Youseff's discharge order informed her that "debts for most student loans" were "not discharged."  *Id.*

- Youseff did not raise any issue in her bankruptcy case concerning the dischargeability of her student loans until October 2019, *more than five years after her discharge*.  *Id.*, Dkt. No. 11.

- Homaidan filed this adversary proceeding on June 23, 2017; Youseff joined as a plaintiff on December 17, 2019.  Adv. Pro. No. 17-1085, Dkt. Nos. 1, 166.

- In the complaint and its later amendment, Homaidan and Youseff allege that they obtained certain "Tuition Answer" loans in amounts that exceeded the "cost of attendance" at their respective schools.  *Id.*, Dkt. Nos. 1, 160.

- Homaidan and Youseff contend that, because their loans exceeded the "cost of attendance," they were not "qualified education loans" and were thus dischargeable in bankruptcy, notwithstanding that "most student loans" are not dischargeable.  *Id.*

- Homaidan and Youseff, for themselves and on behalf of a putative class, seek injunctive relief, damages, sanctions, and other remedies for Navient's alleged attempts to collect on Tuition Answer loans that were discharged in bankruptcy.  *Id.*

- The putative class outlined in the complaint and the amended complaint is limited to borrowers who received Tuition Answer loans that exceeded the cost of attendance, but is nationwide in scope, including borrowers who received discharges in all "district[s] . . . of the United States."  *Id.*

- Homaidan and Youseff did not file any motion for provisional relief in this case until December 19, 2019 (*more than two years after the case was filed*), when they moved for entry of a preliminary injunction. *Id.*, Dkt. No. 167.

- The motion for a preliminary injunction was fully briefed by February 12, 2020, and remained pending until October 17, 2022. *Id.*, Dkt. Nos. 168, 189, 194.

- Homaidan and Youseff did not move for class certification until December 19, 2019 (more than two years after this case was filed). *Id.*, Dkt. Nos. 167, 169.

- The motion for class certification was fully briefed by March 18, 2020, and has remained pending since that date. *Id.*, Dkt. Nos. 169, 200, 204, 218.

- Homaidan and Youseff did not file a motion for a TRO until April 7, 2022, *almost five years after this case was filed*. *Id.*, Dkt. No. 314.

- The TRO motion failed to identify any new or exigent circumstance that did not exist when this case began (over five years ago), and it offered no meaningful explanation for Plaintiffs' five-year delay in seeking a TRO to address allegedly "irreparable" injury.

- On July 11, 2022, the Court entered the TRO enjoining Navient from "acts to collect on" an inadequately described category of loans that could involve loans with outstanding balances in excess of $100 million. *Id.*, Dkt. Nos. 341, 342.

- On October 17, 2022, the Court converted the TRO of July 11, 2022 into a preliminary injunction. *Id.*, Dkt. Nos. 403, 404. The Injunction cures none of the defects inherent in the July 11 order.

### III.   <u>LEGAL STANDARD</u>

Under Bankruptcy Rule 8007, a party may move in the bankruptcy court for "the suspension . . . of proceedings in a case or other relief permitted by subdivision (e)." Fed. R. Bankr. P. 8007(a)(1)(D). In turn, Rule 8007(e) provides that a bankruptcy court may suspend proceedings in the case or issue other appropriate orders during the pendency of an appeal. Fed. R. Bankr. P. 8007(e).

Courts considering a stay pending appeal balance four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure other parties interested in the proceeding; and (4) where the public interest

lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009).  The degree to which a factor must be present varies with the strength of the other factors. *In re A2P SMS Antitrust Litig.*, 2014 WL 4247744, at *2 (S.D.N.Y. Aug. 27, 2014).

## IV.      THE COURT SHOULD ENTER A STAY PENDING APPEAL

As set forth below, the governing factors for the issuance of a stay pending appeal strongly support staying the effective date of the Injunction until after the resolution of Navient's appeal.

### A.      Navient Has a Strong Likelihood of Prevailing on Appeal

The "level or degree of possibility of success" necessary to support a stay pending appeal "will vary according to the court's assessment of the other stay factors."  *Mohammed v. Reno,* 309 F.3d 95, 101 (2d Cir. 2002).  The level of success that a movant must show therefore lies "between possible and probable and is intended to eliminate frivolous appeals."  *In re Sabine Oil & Gas Corp.*, 551 B.R. 132, 146 (Bankr. S.D.N.Y. 2016) (quotations and citation omitted).  Here, Navient has a strong likelihood of prevailing on appeal that independently justifies a stay, even before consideration of the remaining factors.

### i.      The Bankruptcy Court Lacked Authority to Grant Nationwide Relief

The Injunction grants nationwide relief, effectively enforcing discharge injunctions issued by bankruptcy judges outside of the Eastern District of New York.  Navient is likely to prevail on its position that, to this extent, the Injunction exceeded the Court's authority.  The circuit courts presented with the question—the Fifth, Seventh, Ninth, and Eleventh Circuits—have uniformly held that a bankruptcy court does *not* have the authority to address the alleged violation of discharge injunctions issued outside of the district in which the bankruptcy court sits.  *See, e.g., Crocker v. Navient Solutions, L.L.C.,* 941 F.3d 206, 216-17 (5th Cir. 2019); *Cox v. Zale Delaware,*

*Inc.,* 239 F.3d 910, 919-17 (7th Cir. 2001); *Walls v. Wells Fargo Bank, N.A.,* 276 F.3d 502, 509-10 (9th Cir. 2002); *Alderwoods Grp., Inc. v. Garcia,* 682 F.3d 958, 970 (11th Cir. 2012).

There is no circuit-level authority to the contrary.[1]  The Second Circuit, moreover, has signaled strongly that it will align itself with its sister circuits on this point.  *See, e.g., Belton v. GE Capital Retail Bank,* 961 F.3d 612, 617 (2d Cir. 2020) ("[W]e question whether a bankruptcy court would even have jurisdiction to hold a creditor in contempt of another court's order"), *cert. denied,* 141 S. Ct. 1513 (Mar. 8, 2021); *Anderson v. Credit One Bank, N.A.,* 884 F.3d 382, 390-91 (2d Cir. 2018) (adopting reasoning recognized in *Belton* as "anathema to a nationwide class action" for discharge violations), *cert denied* 139 S. Ct. 144 (Oct. 1, 2018).

And, on May 4, 2022, the Second Circuit granted a petition for leave to file a direct appeal in *Bruce v. Citigroup Inc.,* Case No. 22-134 (2d Cir. May 4, 2022), to address head-on the specific question of whether a bankruptcy court "can adjudicate nationwide class claims for contempt predicated on alleged violations of discharge injunctions issued by other courts nationwide." Significantly, *Bruce* involves an appeal from an order that adopted and relied almost exclusively on the analysis of the Bankruptcy Court that issued the Preliminary Injunction now under appeal, as expressed in *Ajasa v. Wells Fargo Bank, N.A.,* 627 B.R. 6 (Bankr. E.D.N.Y. 2012), and *Golden v. Nat'l Collegiate Trust,* 596 B.R. 239 (Bankr. E.D.N.Y. 2019).  By accepting a direct appeal in *Bruce*, the Second Circuit has at least confirmed that there exist substantial grounds on which to question the Bankruptcy Court's view of its authority to address alleged discharge violations from around the country.

---

[1] Plaintiffs have cited the First Circuit's decision in *Bessette v. Avco Fin. Services, Inc.*, 230 F.3d 439 (1st Cir. 2000), as supporting a contrary rule, but the decision there ultimately dealt only with authority to enforce discharge injunctions within a single judicial district.

In sum, the relevant authority casts considerable doubt on the Bankruptcy Court's analysis of its authority to issue nationwide relief, and the Second Circuit is now poised (in *Bruce*) to rule definitively on this issue.  This authority, all of which is buttressed by *Taggart v. Lorenzen*, 139 S. Ct. 1795 (2019),[2] shows that there is a substantial likelihood that Navient will prevail on its position that the Injunction impermissibly provides relief to borrowers who obtained discharges outside of the Eastern District of New York.

### ii.     The Court Lacked Authority to Grant Class-Wide Relief

There were only two Plaintiffs before the Bankruptcy Court: Hilal Homaidan and Reeham Youssef.  There is a motion for class certification pending, but no class has been certified.  Nevertheless, the Injunction restrains Navient from engaging in collection activities directed at borrowers who, at this point, are strangers to this case.

When Plaintiffs first sought provisional relief (more than two years after commencing this suit), they acknowledged that, before applying that relief on a class-wide basis, the Bankruptcy Court would have to first rule on class certification and determine that all of the Rule 23 factors justified the maintenance of this case as a class action.  *See* Dkt. No. 194 at 6.  But, when they later moved for a temporary restraining order (after an unexplained 5-year delay), they abandoned that position and asked the Bankruptcy Court to grant class-wide relief before certifying a class.

Navient has a strong likelihood of prevailing on its position that the Bankruptcy Court erred in enjoining Navient on a class-wide basis before determining whether a class could ever be certified.  Even assuming courts have discretion in some circumstances to grant class-wide injunctive relief before certifying a class, this is not a case justifying the exercise of any such

---

[2] In *Taggart*, the Supreme Court made clear that courts enforcing discharge injunctions must follow the "traditional standard[s] in equity practice."  139 S. Ct. at 1801.  Those standards include the rule that only the issuing court can adjudicate a claim for violating an injunction.

discretion, especially given the exceedingly weak case Plaintiffs have offered to justify class certification and their unjustified delay in seeking provisional relief.

Moreover, the sparse authority Plaintiffs cite for this cart-before-the-horse approach is limited to cases where certification was sought under Rule 23(b)(2), which allows for class certification when "final injunctive relief . . . is appropriate respecting the class as a whole." *See LaForest v. Former Clean Air Holding Co.,* 376 F.3d 48 (2d Cir. 2004). In that context, absent class members can be bound by a judgment with no notice and no opportunity to opt out.

In this case, by contrast, any certification order would have to be entered, if at all, under Rule 23(b)(3), since Plaintiffs seek individual monetary awards to potentially thousands of putative class members. *See Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 360-61 (2011) (certification under (b)(2) is unavailable where monetary relief is not incidental to injunctive relief and "when each class member would be entitled to an individualized award of monetary damages"). In a (b)(3) case, absent class members must receive notice and an opportunity to exclude themselves from the class.

This distinction renders the grant of class-wide relief before class certification particularly inappropriate in this case. Navient demonstrated, with uncontroverted evidence, that the Injunction has the potential to severely disadvantage members of the putative class. *See* Dkt. No. 320 at 16-18. *See also* Declaration of Patrick Theurer filed contemporaneously herewith. Had the Bankruptcy Court deferred entry of the Injunction until after certification of any class, the class members, under Rule 23(b)(3), would have been entitled to notice and an opportunity to exclude themselves from the class, thereby receiving the opportunity to protect themselves from the potential harm the Injunction may engender. By entering the Injunction before certifying the class and providing notice, the Bankruptcy Court has put absent class members at substantial risk of

9

harm without any meaningful opportunity to protect their interests. While there might have been some strained argument justifying that approach in a case seeking certification of a no-notice class under Rule 23(b)(2), it is completely inappropriate—and likely unconstitutional— in a (b)(3) case like this.

Accordingly, the Bankruptcy Court's extraordinary decision to grant class-wide relief for an uncertified (and uncertifiable) class is likely to be reversed on appeal.

> **iii.    The Bankruptcy Court Lacked Authority to Grant Relief on A Record Devoid of Supporting Evidence**

The Injunction materially alters the status quo that has existed since this case was filed some five years ago.  In this context, Plaintiffs were required to show a "clear" or "substantial" likelihood of success on the merits in order to obtain injunctive relief on a provisional basis.  *See, e.g., Bronx Household of Faith v. Bd. of Educ. of City of New York,* 331 F.3d 342, 349 (2d Cir. 2003).  Since Plaintiffs sought class-wide relief, and since their sole liability theory depends on proof that Navient is collecting on loans that exceed the cost of attendance, Plaintiffs had to establish at least three key points related to the merits of this dispute: (1) the legal proposition that it is unlawful to collect on a loan that exceeds the cost of attendance, (2) the factual proposition that Navient is likely doing so across the universe of loans covered by the Injunction; and (3) the legal proposition that, if a loan exceeds the cost of attendance by any amount, the entire loan balance becomes dischargeable.  Plaintiffs failed to make those showings.

On the first legal issue, Plaintiffs erroneously assume that application of 11 U.S.C. § 523(a)(8)(B) turns on nothing more than a formulaic, objective comparison of one number to another.  Under Plaintiffs' view, a loan is discharged if x is greater than y, where x = the amount disbursed on the loan and y = the student's cost of attendance (as determined by the school) minus other financial aid available to the student.  Under this formulation, which the Bankruptcy Court

appears to have adopted, the student's purpose in securing the loan, and the representations the student made to the lender to obtain the loan, are irrelevant.

Navient's position that this is the wrong legal framework is likely to prevail on appeal. The statute does *not* set up any such objective, mathematical formula for determining whether § 523(a)(8)(B) applies. In fact, there is no express mention of "cost of attendance," or the relationship between "cost of attendance" and loan amounts anywhere in § 523(a)(8)(B). Rather, the concept of "cost of attendance" is only relevant to the inquiry because of § 523(a)(8)(B)'s incorporation by reference of Section 221(d)(1) of the Internal Revenue Code.

Section 221(d)(1), moreover, eschews the formulaic approach advocated by Plaintiffs in favor of a purpose-based test. Under Section 221(d)(1), a loan is a "qualified education loan," and thus exempt from discharge, if it was "incurred by the [borrower] solely to pay qualified higher education expenses," with "qualified higher education expenses" later defined as "the cost of attendance." Under this formulation, the critical question is *the purpose* for which the debt was incurred—why did the borrower take out the loan and why did the lender agree to loan the funds?

When § 523(a)(8)(B) is properly understood in this way, Navient is likely to prevail since both Homaidan and Youssef certified to Navient in the applicable loan documents that their loans were within the cost of attendance and that they were borrowing the funds for the purpose of paying qualified education expenses. *See Defendants' Response in Opposition to Plaintiffs' Motion for Partial Summary Judgment* [Dkt. No. 188] at 5-7. These certifications conclusively show why and for what purpose the debts were "incurred," thus satisfying the test for non-dischargeability that, through IRS Code section 221(d)(1), is incorporated into the Bankruptcy Code.[3]

---

[3] By enacting 15 U.S.C. § 1638(e)(3), Congress codified that obtaining borrower certifications of this type is the only duty that a private lender has when originating qualified education loans. Since Navient obtained such certifications on Tuition Answer loans, those loans, without more, must be treated as non-dischargeable qualified education loans.

What's more, even under Plaintiffs' construction, Navient would still have a strong likelihood of success on appeal, primarily because Plaintiffs offered literally no competent evidence that Navient is in fact collecting or attempting to collect on any loan where the amount disbursed to the borrower exceeded the borrower's actual cost of attendance.  Plaintiffs did not even make this showing with respect to Hilal Homaidan and Reeham Youssef, let alone with respect to any member of the uncertified, putative class they seek to represent.  At most, Plaintiffs demonstrated that Homaidan and Youssef received Tuition Answer loans in amounts that may have exceeded average, estimated cost-of-attendance figures for the relevant academic years reported by IPEDs.[4]

But, as Navient demonstrated, cost-of-attendance figures vary from student-to-student based on individualized circumstances, making IPEDs an unreliable tool for measuring whether a given loan exceeded actual cost of attendance for purposes of applying 11 U.S.C. § 523(a)(8)(B).  Thus, since Plaintiffs failed to offer any evidence of the actual cost of attendance for Homaidan, Youssef, or any putative class member, they failed, even assuming the validity of their flawed legal theory, to show a likelihood of success.

    **iv.**    **The Bankruptcy Court Lacked the Authority to Enter an Overbroad Injunction**

Even were their theory otherwise correct, Plaintiffs have offered no support for their argument that, if a loan exceeds the cost of attendance by any amount, the entire loan balance becomes dischargeable.  Even though there is no support for this proposition, the Injunction draws no distinction between the portion of loan balances within the cost of attendance and the portion,

---

[4] IPEDS is an acronym for the Integrated Postsecondary Education Data System maintained by the National Center for Education Statistics.  As revealed on its website, IPEDS does not capture "student-level information."  *See* IPED *Survey Components*, NATIONAL CENTER FOR EDUCATION STATISTICS, *https://nces.ed.gov/ipeds/use-the-data/survey-components* (last accessed July 21, 2022).

if any, that exceeded the cost of attendance.  Navient is likely to prevail on its position that this was error.

Although recognizing the logic of Navient's position that Plaintiffs could at most be entitled to an injunction prohibiting collection only with respect to the portion of a given Tuition Answer loan that actually exceeds the cost of attendance, the Bankruptcy Court nevertheless rejected it.  According to the Bankruptcy Court, "if a private student loan exceeds the applicable cost of attendance, then the entire student loan debt is dischargeable."  The Bankruptcy Court based this conclusion on the view that "[t]he Bankruptcy Code does not allow for a partial discharge of student loan debt."  *Homaidan v. Sallie Mae*, No. 08-48275-ESS, 2022 WL 10707498, at *35 (Bankr. E.D.N.Y. Oct. 17, 2022).  The Bankruptcy Court erred in this conclusion, resulting in an Injunction that is grossly overbroad.

To support its conclusion, the Bankruptcy Court cited only two cases, each of which arose in the undue hardship context and one of which was subsequently overruled by the Ninth Circuit. The better reasoned authority holds, contrary to the Bankruptcy Court's conclusion, that the Bankruptcy Code *does* allow the partial discharge of a debt, in both the undue-hardship context and under other exceptions to dischargeability.  *See, e.g., In re Tirch*, 409 F.3d 677, 680 (6th Cir. 2005) ("Despite the fact that 11 U.S.C. § 523(a)(8) makes no mention of partial discharges, we have held that the bankruptcy court may grant a partial discharge of such a debt pursuant to the equitable powers enumerated in 11 U.S.C. § 105(a)."); *In re Saxman*, 325 F.3d 1168, 1174 (9th Cir. 2003) (similarly permitting partial discharge of student loan under 11 U.S.C. § 523(a)(8)); *see also In re Parra*, 483 B.R. 752, 756 (Bankr. D.N.M. 2012) (concluding debt dischargeable in part but nondischargeable as to portion of debt procured by debtor's "false pretenses in providing invalid substitute titles as security for the balance due on other vehicles."); In re Hunter, 36 B.R.

28, 31 (Bankr. D.N.D. 1983) (concluding portion of debt procured by intentional misrepresentation regarding land ownership nondischargeable but remainder of debt dischargeable where creditor could not prove it was procured based on false representation), aff'd as modified, 771 F.2d 1126 (8th Cir. 1985); *Matter of Redford*, 7 B.R. 322, 324–25 (Bankr. M.D. Ga. 1980) (holding dischargeable a portion of debt where creditor could not show reasonable reliance on false representation but holding debt otherwise nondischargeable).

The Bankruptcy Court should have applied this partial-discharge approach, which would have yielded an Injunction of far narrower scope.  On appeal, Navient has a substantial chance of at least having the Injunction scaled back to cover only the portion of covered loan balances that actually exceeded the cost of attendance.

**v.    The Bankruptcy Court Lacked Authority to Grant Relief after Five Years of Unexplained Delay**

It is undisputed that Plaintiffs waited more than two years after filing this case to seek a preliminary injunction.  It is further undisputed that they waited five years after commencing this case to file the motion for a temporary restraining order or to otherwise urge action on their preliminary injunction motion.

Navient is likely to prevail on appeal on its position that this delay, for which Plaintiffs offered no meaningful explanation, precludes issuance of the extraordinary relief set forth in the Injunction.  In the Second Circuit, a delay in seeking injunctive relief of only a couple of months will generally foreclose issuance of a preliminary injunction or a temporary restraining order.  *See, e.g., Citibank, N.A. v. Citytrust,* 756 F.2d 273, 276 (2d Cir. 1985); *Gidatev, S.R.L. v. Campaniello Imports. Ltd.*, 13 F. Supp. 2d 417, 419 (S.D.N.Y. 1998).  Here, there was a multi-year delay, which by itself makes it highly likely that the Injunction will be reversed on appeal.

14

vi. **The Bankruptcy Court Lacked Authority to Grant Relief Through a Non-Compliant Order**

The Injunction suffers from at least two additional defects that render it non-compliant with Rule 65 and with the requirements for the issuance of injunctive relief. Navient is likely to prevail on its position that these defects require that the Injunction be vacated.

First, the Injunction does not list the loans on which Navient can no longer collect, nor does it identify any specific borrowers to whom Navient is restrained from directing collection activities. Instead, the Injunction implicitly incorporates by reference thousands of loan records and financial-aid records that may show whether a loan exceeded the cost of attendance, thus leaving it to Navient—under threat of contempt—to locate and review those records and to guess that it is interpreting them consistent with the Court's view. In this way, the Injunction plainly violates Rule 65, which requires that a restrained party be able to identify "the act or acts restrained or required" from the four corners of the injunction and without having to interpret external materials referenced or incorporated in the order. *See, e.g., Corning Inc. v. PicVue Elecs., Ltd.,* 365 F.3d 156, 158 (2d Cir. 2004) ("[E]very order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained ...."); *Sanders v. Air Line Pilots Ass'n, Int'l*, 473 F.2d 244, 247 (2d Cir. 1972) ("The normal standard of specificity is that the party enjoined must be able to ascertain from the four corners of the order precisely what acts are forbidden.").

Second, the Injunction precludes collection activities on loans that "exceed the cost of attendance," but provides no meaningful guidance on how to determine whether a loan falls into that category. As the Bankruptcy Court well knew, Plaintiffs contend that average, estimated data published by IPEDS is a reliable indicator of cost of attendance, but Navient disputes that view.

As the Bankruptcy Court was further aware, Navient contends that borrower certifications constitute a sufficient basis on which to determine whether cost-of-attendance criteria under § 523(a)(8)(B) have been satisfied. By referring only to loans exceeding the "cost of attendance," the Injunction leaves these important questions unresolved.

As a result, the Injunction really adds nothing to the original discharge injunction that putative class members received in their underlying bankruptcy cases. That discharge injunction effectively said: "Debts that are legally dischargeable are hereby discharged," without determining any legal or factual questions applicable to the dischargeability of specific debts. The Injunction effectively says no more. While the Injunction does incorporate a reference to "cost of attendance," that rote recitation leaves unresolved the legal and factual questions applicable to the dischargeability of Tuition Answer loans that are central to this case.

The Injunction therefore is really nothing more than a successive injunction that, like the discharge injunctions it purports to enforce, says nothing more than: "obey the law." Navient is likely to prevail on its position that such an injunction is improper. *See, e.g., Alderwoods Grp., Inc. v. Garcia,* 682 F.3d 958, 968 (11th Cir. 2012) ("The party seeking to enforce an injunction cannot, however, obtain a successive injunction—i.e., an injunction ordering compliance with an existing injunction."); *Barrientos v. Wells Fargo Bank, N.A.,* 633 F.3d 1186, 1190 (9th Cir.2011) ("An injunction against violating an existing injunction would be superfluous, adding no judicial action and providing no additional relief."); *In re Hye Rhee Kong*, No., 2013 WL 6923063, at *2 (Bankr. C.D. Cal. Nov. 15, 2013) (denying request for preliminary injunction in connection with alleged discharge violation claims) and *In re Fonner*, 262 B.R. 350, 357–58 (Bankr. W.D. Pa. 2001) (same); *In re Bishop*, 578 B.R. 158, 167 (W.D.N.Y. 2017) ("[A]s the Second Circuit instructs, 'an injunction must be more specific than a simple command that the defendant obey the

law.'") (quoting *Peregrine Myanmar v. Segal*, 89 F.3d 41, 51 (2d Cir. 1996); *see also City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 144–45 (2d Cir. 2011) ("A directive to undertake 'appropriate' measures does not 'describe in reasonable detail ... the act or acts restrained or required[.]'") (internal citation omitted).

Third, notwithstanding a clear dispute between the parties concerning what constitutes an "act to collect," the Injunction does not delineate what Navient is required to do or what it is prohibited from doing, in order to be compliant. Without defining "acts to collect," the Injunction is hopelessly vague and again requires Navient to guess at its meaning.

* * *

On each issue outlined above, Navient has a strong likelihood of prevailing on appeal. With the combined impact of these issues, the first factor in the stay analysis tips overwhelmingly in Navient's favor.

### B.    Navient will be Irreparably Injured Absent a Stay

The Injunction will injure Navient in at least two ways. First, compliance with the Injunction will require Navient to incur significant costs. Since the Court did not require the posting of any bond, and since Hilal Homaidan and Raheem Youseff are likely judgment proof, Navient will have no meaningful remedy to recoup these costs should it later be determined that the Injunction was improvidently entered. In this context, the compliance costs that Navient will incur constitute an injury that is irreparable for purposes of the second factor governing whether to issue a stay pending appeal. *See, e.g., Allstate Ins. Co. v. Harvey Fam. Chiropractic,* 677 F. App'x 716, 718 (2d Cir. 2017) ("Irreparable harm exists where . . . there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they

previously occupied."); *Brenntag Int'l Chemicals, Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999) (same).

Second, as demonstrated by the Declaration of Patrick Theurer filed contemporaneously herewith, the Injunction is almost certain to cause many loans that are currently being repaid to slip into default. Indeed, the whole point of the Injunction is to induce putative class members to suspend loan payments during the many months (if not years) it will take to bring this case to final resolution. A significant number of borrowers who accept this inducement will never again resume payment, whether or not it is ultimately determined that their loans were dischargeable in bankruptcy. This may not impact Navient's legal ability to seek repayment, but it does mean, practically speaking, that the Injunction will likely cause Navient substantial, real-world losses that it will never recover, even if Navient ultimately prevails in this case.

### C.      A Stay Will Not Substantially Injure Other Interested Parties

Staying the Injunction pending appeal will allow the continuation of the status quo that has existed since this case was commenced *over five years ago*. Under that status quo, Navient could potentially receive payments on loans that, under Plaintiffs' theory, were discharged in bankruptcy. That circumstance, however, creates no risk of irreparable harm to borrowers. If Plaintiffs ultimately prevail in this case, any injury suffered by borrowers who made payments on discharged loans would be remediable through an award of money damages.

Any suggestion by Plaintiffs that a stay could occasion other harm to borrowers that could *not* be remedied by an award of damages is belied by their own litigation conduct. To the extent Plaintiffs really believed that ongoing collection activities were causing irreparable injury for which money damages would be an inadequate remedy, they would have filed their motion for a temporary restraining order immediately upon commencing this lawsuit. The fact that they instead

waited for *two years* to seek a preliminary injunction and waited another *three years* after that to seek a temporary restraining order should effectively estop them from opposing a stay pending appeal on the basis of any claim that borrowers may suffer irreparable harm.  *See, e.g., Citibank, N.A. v. Citytrust,* 756 F.32d 273, 276 (2d Cir. 1985).

**D.  The Public Interest Favors Issuance of a Stay**

There is a strong public interest in ensuring that citizens are not prejudiced by legal processes without first being provided notice and an opportunity to be heard.  Due process requires no less.  The Injunction violates this public interest because it is likely to cause significant harm to potentially thousands of absent members of a putative class before a class has been certified and before they have been given notice or any other meaningful opportunity to protect their interests. *See* Theurer Declaration.

There is also a strong public interest in protecting both lenders and borrowers from unscrupulous practices in connection with student loans and other lending transactions.  The Injunction runs afoul of this public interest by effectively rewarding borrowers for having submitted loan applications and other loan documents containing material misrepresentations.

The circumstances of the named Plaintiffs demonstrate this.  Both of them represented to the lender on their Tuition Answer loans that they would use the loan proceeds solely for the purpose of paying education costs within the cost of attendance at their respective schools.  Both now admit, however, that they did *not* use the loan proceeds for that purpose.  Under the Injunction, they are effectively rewarded for having made these misrepresentations.  Thus the irony of this case: Honest students who used Tuition Answer loans as they promised they would are denied discharges but—under Plaintiffs' view (adopted in the Injunction)—unscrupulous borrowers who breach their promises are granted discharges.  That violates the public interest.

## V.     CONCLUSION

For the foregoing reasons, the Court should stay the effective date of the Injunction until

after the resolution of Navient's appeal.

Respectfully submitted,

/s/ *Shawn R. Fox*
Shawn R. Fox
McGuireWoods LLP
1251 Avenue of the Americas, 20th Floor
New York, New York 10020
Telephone: 212.548.2100
Email: sfox@mcguirewoods.com

- and -

Thomas M. Farrell (pro hac vice)
McGuireWoods LLP
845 Texas Avenue, Suite 2400
Houston, Texas 77002
Telephone: 713.571.9191
Email: tfarrell@mcguirewoods.com

- and -

Dion W. Hayes (pro hac vice)
K. Elizabeth Sieg (pro hac vice)
McGuireWoods LLP
800 East Canal Street
Richmond, Virginia 23219
Telephone: 804.775.1000
Email: dhayes@mcguirewoods.com
Email: bsieg@mcguirewoods.com

## CERTIFICATE OF SERVICE

I certify that on the 3rd day of November, 2022, I filed the foregoing document with the
Clerk of the Court using the CM/ECF system, which will send a notification of such filing to all
counsel of record.

/s/ *Shawn R. Fox*
Shawn R. Fox

20